All rise. The United States Court of Appeals for the Federal Circuit is now open and in session. I take the United States in its honorable court. Please be seated. Good morning and thank you for hosting our court today in your courtroom. We're excited to be here. Our first case for argument is 23-2008 In Re. Soto. Mr. Meeker, please proceed. Thank you, Your Honors. May it please the court, the claims here require an upstream bandwidth allocation that is received by the optical LAN client in the downstream data. And the client uses that upstream bandwidth allocation to communicate its data upstream. Now, the office used Yuki to incorporate that exact feature into the claims, the bandwidth allocation to incorporate it into husbands. Do you agree that the only issue on appeal is whether a skilled artisan would have been motivated to combine husbands and Yuki? That's correct. Yes. Yes. But incorporating Yuki into husbands would render husbands inoperable for its intended purpose, would require substantial reconstruction or redesign, or it would also change the principle of the operation. Now, this case is governed by Gordon and Rowdy, which I believe the office has not addressed. Here, husbands has an open access network where terminals may initiate communications with other terminals without a central controller. The problem is you just articulated a lot of evidence that the board could have used to go the other way in your favor. But on appeal, we have to review the board's decision for substantial evidence. So what we don't do is look at, oh, well, what's the other evidence that could have gone that other way? We look at was there evidence in this record that was sufficient for the board to reach the conclusion it chose to reach? And so what you have to do battle with is Yuki explains expressly the benefits of its protocol as compared to CSMA. And you have to find that the board also found that husbands discloses an optical LAN that uses CSMA. So you've got a reference that uses a protocol and you've got another reference that says ours is better than things that use that protocol, use ours in those kinds of cases. I don't see, to be honest with you, why that isn't the end of your case. Because I believe it is either Gordon or Rowdy that sets forth that a motivation to combine is inappropriate if it renders the combination or renders the prior art inoperable for its intended purpose. Why are you citing as a board case? Why aren't we talking about KSR? I mean, this inoperability procedure, I mean, there's a bit of it left, but not much after KSR. What we look to is whether a skilled artisan looking at the two references would be taught to do this combination. And the board made that finding. There's evidence in the record about that. Again, why isn't that substantial evidence? I believe here is because the board essentially ignored the arguments by claiming that the limitations were not in the claims. And so the board didn't even consider it. The board just disregarded it. And I believe that the board is required to consider both evidence that is in favor of the combination and that may detract from the combination. What do you mean that they ignored it? Did they ignore it or did they just not speak about it directly in their opinion? What is the precise thing? Because it would be a problem if the board didn't address one of your arguments. That would be a problem. That would be like an APA type problem. Not exactly the way you framed your appeal, but it would be a real problem. So what is it that you think the board didn't do that it should have done? So what I believe the board did was the board mentioned the arguments, but then said that the arguments don't matter because they don't relate to claim limitations. Can you point us to a specific page where you're saying there's an error by the board in the board's decision? So just for an example, on page 13 on the board's decision, this is in appendix 14. Further on down in the bottom of the last full paragraph, this is where I'm saying that the alleged incompatibility with Yuki's access protocol and continuing on are not commensurate in scope with claim one. And for that reason, do not demonstrate error in the examiner's obviousness rejection of claim one. Hold on. Is this because the claim one broadly recited a LAN? It didn't specifically recite CSMA, but CSMA is a type of LAN. Isn't that the board's logic here? So how is that a problem? So CSMA is not a type of LAN. It's a protocol of how to communicate on an optical network or a network. The problem here is the claim limitations involve bandwidth allocation. And Yuki was brought in for that bandwidth allocation. But by ignoring CSMA and what that means in husbands, that is how husbands allocates its bandwidth. That's what's getting replaced by Yuki. In husbands, CSMA operates by clients initiate communications if they don't hear anybody talking. Then they start talking. That can result in conflicts. And there are ways to result in conflict. If you hear someone talking when you're talking, then you can stop talking. That's the CD portion of the CSMA CD. But that determines who gets to use the bandwidth. Essentially, any client can use the bandwidth. So it's those claim limitations about the bandwidth allocation and how it's done that are in the claims at issue. Do you agree that the claims do not include any requirements for a certain protocol? I believe that's correct, but it needs some form of bandwidth allocation. That is expressly in the claims. And so what was brought in from Yuki is its bandwidth allocation and what was replaced and what would become inoperable is how husbands did its bandwidth allocation. I don't know what you mean by inoperable. I mean, are you kind of going back to that old-fashioned prosecutor, you can't plug this new thing into the old thing? I mean, a skilled artisan would know how to make revisions that are necessary to embrace a slightly different version of something. So what do you mean by inoperable? So that's correct. So this is not a case about bodily incorporation or physical incorporation. Yes, one skilled in the art could take husbands, make all the modifications, change the devices, put in a head end that had operability to become the master, as is described in Yuki, to allocate bandwidth to the clients. One skilled in the art could do that, but what we need to ask beyond that is why would they do that? And it's not the inoperability of the physical components of the system in husbands. It's the conceptual what can those clients do. They can, without any permission, without any central controller, they can initiate communications. They can no longer do that if you implement Yuki's system in husbands. That's what's eliminated. Well, I mean, that's hard because that's a fact question. And the board found husbands discloses the CSMA protocol. Yuki discloses that its protocol is actually superior to CSMA, and it lists specific benefits, increasing throughput, system capacity, reducing latency time, relaxed buffer memory requirements. And, you know, we're not technology experts here at the Federal Circuit. We have to give substantial evidence deference to the board when they make fact findings related to these things. So I'm struggling a little bit with how I go beyond what the board did in finding your favor on that point. So I think it relates to, I think, the Fritz case. That was where there was an issue of inoperability of an irrigation system. And the alleged combination would bring in art that would have the irrigation system used to retain soil. And so in that case, you would get the benefits. And what case is this? In re Fritch. And is that one of our cases? I believe it is. Yes, it's a Court of Appeals for the Federal Circuit. Then that's us. Yeah, I hope so. I'm in the right place. But my point is, in that case, there was a reason to make that combination. You could retain the soil. That was what the prior art that was being defined was for. Well, but the board said there's a reason here. It's throughput, system capacity, reduced latency time, relaxed buffer memory. Like the board said, there's reasons to do it here, too. Correct, correct. But my point is, in that case, doing that, using it for the soil retention would make the irrigation system inoperable for its intended purpose. It would clog up the irrigation system. And in that case, that rendering inoperable for its intended purpose made it not obvious. And that's the similar case we have here. Even though there is a reason to make the combination, and we're not disputing that there are those benefits. There is a reason, but one's skilled in the art looking at it. Unfortunately, I kind of am in the same camp as Judge Hughes, because I just realized this Enright Fritch case that you said, because honestly, the doctrine that you're discussing sounds a little antiquated to me, and maybe not completely in step with modern obviousness law, especially motivation combined. It's from 1992. I mean, KSR is a Supreme Court case from 2007. I don't know how we go back to our law in 1992 when the Supreme Court came along in 2007 and said, you need to take a broader look at how things can be combined. I mean, it sounds to me like you're saying there are certain parts of husbands that work in a certain way that couldn't work in that way if you use UKIP. Is that what you're saying? Yes, they would no longer be present. But the test, the test under KSR is if a skilled artisan would look to these two references and be motivated to combine them to reach the claimed invention. Whether we're talking about certain elements of husbands that are not claimed by the patent or not relevant to the inquiry, KSR doesn't require that anymore, and the fact that there might be parts of husbands that would also have to be altered to reach the claimed invention doesn't foreclose a motivation combined, does it, under KSR? I believe in that case you need to look at the prior art as a whole. And it seems what you'd be doing in that case would be ignoring portions of it. And so you have one skilled in the art who is looking at both of these references. Well, it's not an anticipation case. That's what you do in obviousness. You look at two or more references or sometimes a single reference obviousness and determine that these references combined a skilled artisan would teach a skilled artisan how to get to the patent invention. And all the time there are parts of both of those references that are irrelevant to the inquiry because you're pulling, I mean, sometimes you're pulling an analogous art reference that isn't even in the same field like these two are. So clearly those, you know, you would be ignoring parts of them. You look to them for what they teach for the obviousness inquiry. But I guess maybe I misspoke. It's not just ignoring the portions, but it's ignoring that it would be completely removed. And if it is set in an express feature in the reference that this is why we chose this, this is how it works. I don't think that's the right test. I think under KSR that the test you are now trying to articulate, if it ever existed, has long since been abolished. I think KSR just requires you to look at what the references teach and see if a skilled artisan would teach a skilled artisan the patented claims and that there was a motivation to combine them. If that's the test, then the board's decision is supported by substantial evidence, is it? I mean, I know you didn't cite KSR until nearly the last page of your blue brief, even though it is the prime Supreme Court case on obviousness that covers us now. Correct, but I believe you should be looking at the motivation, including what would not only support it, but detract from it. Okay, Mr. Meeker, let's let Mr. Foreman have some time and we'll give you your rebuttal time. Thank you, Your Honor. May it please the court. I think I just direct the court to page 19 of our red brief, where we cite a number of recent post-KSR cases from this court addressing this exact argument about inoperability and rejecting that argument. And so I think it's a correct statement to say that post-KSR that the case, the Ratty case, which is an old CCPA case and others, that's not really the test anymore. I'd like to point to the, look to the claim language and show just kind of how basic this claim is, where it claims a LAN client with three hardware components, the optical interface, the network interface, and the control module. And that's, it's undisputed that's all in husbands. And then there are... Correct. It just requires... Correct. It just requires... Yes. Okay. What else? I was just going to say that the bandwidth allocation requirements in Claim 1 are undisputably disclosed in YUKI, and YUKI is a point-to-multipoint system where you have upstream and downstream messages. So, and YUKI tells you that this protocol is superior to prior collision detection protocols for a number of reasons. And so I think there's more than substantial evidence here to support the board's decision. I'm happy to answer any questions. Okay. Thank you, Mr. Korman. Mr. Meeker, you have some rebuttal time. I'd just like to make a couple of quick points. I don't believe that KSR overruled Gordon Arati in the reply brief on pages 5 to 6 and 7 to 9. I believe site post-KSR cases applying Gordon Arati. What about all the cases he just pointed us to where we specifically said that KSR got rid of this operability principle? So, several of the cases, I believe, that were cited, there was the Allied Erecting case. In that case, there was an argument about, I think, inoperability, but on the facts, there was a way to incorporate this quick change function without impacting the operability. The Chevrolet case. There, there was some similar argument, but that merely had recognized equivalence in the art. There wasn't a case of inoperability as well. Another case, the Albers case. I think this is the one that's maybe cited in some of the other cases as support. But there, it was just, there was testimony from an expert that it was just a simple case, that there were just simple adjustments that are needed, no inoperability. The Keller case that was cited, that one... I'm sorry, I thought on your opening, you said a skilled artisan could modify the primary reference with UKEY to make it work. Correct. It just said it would require leaving portions of the primary reference. I don't remember the name, unused, or those would be inoperable. So it's not that it would, the two references combined couldn't operate to reach the claimed inventions. It's just what you're saying, that it wouldn't enable the invention claimed in the primary reference to operate. That is precisely what KSR overruled and what precisely we've said in multiple cases that you don't need to show. Yes, it's, so I don't believe that KSR overruled Gordon Arati, but in that particular case that you're describing with here, incorporating would make husbands inoperable for its intended purpose. Okay, thank you Mr. Meeker, your time is up. We thank both counsel, this case is taken under submission.